IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE R. WILLIAMS AND TOMMY WILLIAMS,<br><br>        Plaintiffs,<br><br>v.<br><br>DEFENDERS INC. AND ADT, LLC,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:19-cv-02567-SMH/cgc |

ORDER

Plaintiffs Jacqueline and Tommy Williams (the "Williams") sue Defenders Inc. ("Defenders") and ADT, LLC ("ADT") over a failed home security installation.  Plaintiffs allege unjust enrichment, fraud, negligence, gross negligence, and violations of the Tennessee Consumer Protection Act of 1977 ("TCPA"), Tenn. Code Ann. §§ 47-18-101, et seq.  (D.E. 1-1)  Before the Court are three motions: (1) Plaintiffs' Motion to Reopen Discovery (D.E. 81);  (2) Defendants' Motion to Disallow Usage of Examination Under Oath of James Spears (D.E. 80);  and (3) Defendants' Motion for Partial Summary Judgment.  (D.E. 64)  For the following reasons, Plaintiffs' Motion to Reopen Discovery is **DENIED**, Defendants' Motion to Disallow Usage of Examination Under

Oath of James Spears is **GRANTED**, and Defendants' Motion for Partial Summary Judgment is **GRANTED**.

## I.   Background

The following facts are undisputed unless stated otherwise.

ADT is a limited liability company that provides home security services. (D.E. 1) Its sole member, the ADT Security Corporation, is incorporated in Delaware with its principal place of business in Florida. (Id.) Defenders also provides home security services and is incorporated in Delaware with its principal place of business in Indiana. (D.E 1-1) Defenders is an authorized dealer for ADT and often installs security systems for ADT customers. (D.E. 64-1)

In early February 2019, the Williams saw an ADT advertisement offering a $27.99 monthly rate. (D.E. 1-1) Interested, the Williams scheduled an installation appointment for their Memphis home. (Id.) On February 5, 2019, Defenders sent its employee John Stout to the Williams' home to install the ADT system. (Id.) When Stout arrived, he reviewed the Williams' home and recommended certain security customizations to Jacqueline Williams. (D.E. 75-1) Jacqueline Williams agreed with some of the recommendations and made her own requests. (Id.) Throughout the installation, Jacqueline Williams insisted on paying no more than $27.99, the advertised price. (Id.)

At some point during the installation, Stout decided to install a system that used a cell phone instead of a landline. (D.E. 75-1)  The parties dispute whether Stout and Jacqueline Williams agreed on the cellular plan.  (Id.)  The cellular plan increased the monthly rate to $52.99.  (Id.)  Company policy required Stout to explain this price change, but he forgot to tell Williams.  (D.E. 84-1)

Around midnight, Stout finished working, but the job remained incomplete.  (D.E. 75-1)  Several window sensors did not function.  (Id.)  Before leaving, Stout gave Jacqueline Williams a tablet to sign the contract electronically.  Stout left with a signed contract, but the parties dispute who signed it.  Plaintiffs initially claimed that Jacqueline Williams refused to sign the contract after discovering the monthly price would be $52.99, and that Stout forged her signature.  (D.E. 1-1)  Stout says Jacqueline Williams signed the contract and only realized the adjusted rate afterward.  (D.E. 64-1)  In their response to summary judgment, Plaintiffs claim that Stout did not forge Williams' signature, but induced her to sign by "tricking her into tapping the tablet."  (D.E. 75-1)

Days later, Stout returned to complete the installation. (D.E. 1-1)  Jacqueline Williams still insisted on paying $27.99 a month.  Stout explained that he would have to install a new security panel for the Williams to receive the $27.99 monthly

3

rate.  (Id.)  That would require placing the panel in a different room and leaving a hole where the original panel had been.  (Id.) Jacqueline Williams declined the offer and called Defenders. (Id.)  Defenders insisted it had a valid contract that it would enforce.  (Id.)  Jacqueline Williams asserted that any signature of hers was forged.  (Id.)  ADT charged the Williams roughly $450.  (Id.)  Jacqueline Williams contacted ADT and Defenders multiple times, maintaining that no contract existed, and demanding the return of the $450.  (Id.)  ADT eventually reversed or voided all charges to the Williams' bank account and cancelled the service.  (D.E. 75-1)

On July 26, 2019, Plaintiffs filed suit in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, alleging: (1) unjust enrichment, (2) fraud, (3) negligence, (4) gross negligence, and (5) violations of the TCPA.  (D.E. 1-1) They seek actual, compensatory, and punitive damages in excess of $280,000. (D.E. 18-1)  Defendants removed.

On October 25, 2019, the Scheduling Order set the discovery deadline on June 22, 2020.  (D.E. 15)  On June 16, 2020, the First Amended Scheduling Order extended discovery until September 22, 2020.  (D.E. 42)  On September 29, 2020, the Second Amended Scheduling Order set the discovery deadline on January 15, 2021).  (D.E. 53)  After that, neither party moved to extend discovery.  On November 4, 2020, Plaintiffs subpoenaed the

4

Florida and Tennessee Attorney General's Offices, requesting all complaints filed against Defendants. (D.E. 81) On December 18, 2020, the Florida Attorney General's Office responded with more than 1800 pages of documents. (Id.) The Tennessee Attorney General's Office was not aware of the subpoena until March 12, 2021 because of a change of address that affected service. (Id.) From the Florida Attorney General's Office's response, Plaintiffs identified James Spears as a potential witness with relevant information. (Id.) On February 10, 2021, after the discovery deadline had passed, Plaintiffs examined Spears under oath. Defendants were not present.

On March 29, 2021, Defendants moved for partial summary judgment. (D.E. 64) Plaintiffs' response relies, in part, on Spears' examination under oath. (D.E. 75) Defendants then moved to exclude Spears' examination under Federal Rule of Civil Procedure 37(c). (D.E. 80) Plaintiffs, in their reply, demand sanctions against Defendants for failing to identify Spears pursuant to Federal Rule 26. (D.E. 82) On the same day, Plaintiffs moved to reopen discovery. (D.E. 81) Defendants oppose reopening discovery.

## II. Jurisdiction and Choice of Law

The Court has diversity jurisdiction under 28 U.S.C. § 1332. A federal district court has original jurisdiction of all civil actions between citizens of different states "where the matter

in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

Plaintiffs are Tennessee citizens. (D.E. 1-1) Defendant Defenders is an Indiana corporation with its principal place of business in Indiana. (Id.) Defendant ADT is a limited liability company. For the purpose of diversity, unincorporated entities, including limited liability companies, have the citizenship of each partner or member. Delay v. Rosenthal Collins Group, LLC, 585 F.3d 1003, 1005 (6th Cir. 2009). ADT's sole member is a corporation incorporated in Delaware with its principal place of business in Florida. (Id.) There is complete diversity.

Defendants' Notice of Removal shows correspondence in which Plaintiffs' counsel sought up to $250,000 in damages. (D.E. 1-4) Plaintiffs' Rule 26(a) disclosures show damages of more than $280,000. (D.E. 18-1) The amount in controversy is satisfied. The Court has diversity jurisdiction.

State substantive law applies to state law claims in federal court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938). When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). Throughout the case, the parties have assumed that Tennessee substantive law governs Plaintiffs' claims. (See

D.E. 64-1;  D.E. 75)  The Court will apply Tennessee substantive law.

## III. Standard of Review

### A.   The Motion to Reopen Discovery

Under Rule of Civil Procedure 16 affords a trial judge broad discretion to curtail discovery.  W. Am. Ins. Co. v. Potts, 1990 WL 104034, at *2 (6th Cir. July 25, 1990);  see Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir. 1981) (finding it "well established that the scope of discovery is within the sound discretion of the trial court").  A scheduling order may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4).  "In the absence of some showing why an extension is warranted, the scheduling order shall control." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1522.1 (2d ed. 1990).

### B.   The Motion to Disallow Usage of Examination of James Spears

Under Federal Rule of Civil Procedure 26(a)(1)(A), a party must provide the name, address, and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A).  A party must supplement or correct its responses if the party learns the responses are incomplete or incorrect in some material respect.  Fed. R. Civ. P. 26(e)(1).  If a party's disclosures do not comport with

7

Rules 26(a) or 26(e), the party may not use the relevant information as evidence in a motion, unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1). "The potentially sanctioned party . . . bears the burden of proving harmlessness or substantial justification." <u>EQT Prod. Co. v. Phillips</u>, 767 F. App'x 626, 634 (6th Cir. 2019).

### C.    The Demand for Sanctions

If a party fails to provide information or identify a witness as required by Rule 26 (a) or (e), a court may impose sanctions against the party, unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1). Sanctions can include payment of reasonable expenses, including attorney's fees, caused by the failure.  <u>Id.</u>  District courts have broad discretion in deciding whether to award sanctions, <u>see</u> <u>Pressey v. Patterson</u>, 898 F.2d 1018, 1021 (5th Cir. 1990), and need not explain a decision not to award sanctions. <u>Runfola & Assocs. v. Spectrum Reporting II</u>, 88 F.3d 368, 375 (6th Cir. 1996).

### D.    The Motion for Partial Summary Judgment

Under Federal Rule of Civil Procedure 56, a court shall grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  The moving party can meet this burden by showing the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of its case.  See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. App'x 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly-supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial.  See Fed. R. Civ. P. 56(c).  "A genuine dispute exists when the plaintiff presents significant probative evidence on which a reasonable jury could return a verdict for her." EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (quotation marks omitted).  The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Adcor Indus., Inc. v. Bevcorp, LLC, 252 F. App'x 55, 61 (6th Cir. 2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings.  See Beckett v. Ford, 384 F. App'x 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324).  Instead, the nonmoving party must adduce concrete evidence on which a reasonable juror could return a verdict in its favor.  Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir.

2000);  see Fed. R. Civ. P. 56(c)(1).  The Court does not have the duty to search the record for such evidence.  See Fed. R. Civ. P. 56(c)(3);  InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

## IV.  Analysis

### A. The Motion to Reopen Discovery

Courts consider five factors when determining whether to reopen discovery: (1) whether the movant has demonstrated good cause for reopening discovery; (2) whether the need for additional discovery was precipitated by the neglect of the movant or by the party opposing the motion to reopen; (3) the specificity of the discovery that is sought; (4) the relevance of the discovery being sought; and (5) whether the party opposing the motion to reopen discovery will be prejudiced.  FedEx Corp. v. U.S., 2011 WL 2023297, at *3 (W.D. Tenn. March 28, 2011). The burden is on the moving party to justify reopening discovery. See W. Am. Ins. Co., 1990 WL 104034, at *2.  Plaintiffs fail to justify reopening discovery.

### 1.   There is No Good Cause to Reopen Discovery

Plaintiffs seek to reopen discovery to depose additional witnesses, including Spears, whom they examined after the discovery deadline, and Lawrence Wade Johnson.   (D.E. 81) Johnson is a "Tennessee resident who lodged a near identical complaint against ADT Security Services" about the installation of a security system.   (See id.)   Plaintiffs do not specify any "additional witnesses," other than Spears and Johnson. Plaintiffs argue that the Court should reopen discovery because "equity demands" it.   (D.E. 91)   Plaintiffs do not explain why it took so long to subpoena the Tennessee and Florida Attorney's General's Offices.   They do not explain why they did not move to extend discovery.   Plaintiffs have not shown good cause to reopen discovery.

### 2.   Plaintiffs' Delay Precipitated the Need to Reopen Discovery

The Scheduling Order set the discovery deadline on June 22, 2020.   (D.E. 15)   The First Amended Scheduling Order delayed the discovery deadline until September 22, 2020.   (D.E. 42)   The Second Amended Scheduling Order set the discovery deadline on January 15, 2021.   (D.E. 53)   Yet, Plaintiffs waited until November 4, 2020, to subpoena the Tennessee and Florida Attorney General's Offices.   (D.E. 81)   Because of that delay, Plaintiffs discovered Spears and Johnson's complaints after the deadline.

Plaintiffs maintain that a "change in address" affected service of the subpoena on the Tennessee Attorney General's Office, delaying its response. (Id.) The change in address occurred nearly two years ago. (D.E. 81-3) Plaintiffs could have avoided delay if they had promptly issued the subpoenas. Plaintiffs do not explain the delay. Plaintiffs' delay in issuing their subpoenas precipitated the need to reopen discovery. See FedEx Corp., 2011 WL 2023297, at *3 (party waited until two months before discovery deadline to issue subpoenas).

### 3.   The Motion Lacks Specificity

In their motion, Plaintiffs seek to reopen discovery to "identify, contact, and, as necessary, depose any additional witnesses with information relevant to the present proceeding, including Mr. James Spears and Mr. Lawrence Wade Johnson." (D.E. 81) As framed, Plaintiffs' request lacks "defined parameters or limitations." FedEx Corp., 2011 WL 2023297 at, *3. Plaintiffs' discovery request lacks specificity.

### 4.   The Discovery Sought is Not Relevant

Plaintiffs believe Spears and Johnson's potential testimony is relevant to Plaintiffs' claims of fraud, gross negligence, TCPA violations, and punitive damages. (D.E. 91) Johnson is another ADT customer with a bad experience. (See D.E. 81) Spears was a Florida-based Defenders sales representative in 2018. (D.E. 75) Neither witness is relevant to the present case.

12

### 5.    Reopening Discovery Would Prejudice Defendants

Plaintiffs claim reopening discovery would not prejudice Defendants because Plaintiffs made Defendants aware of Spears' potential testimony.  (D.E. 91)  Plaintiffs also argue that reopening discovery would allow Defendants to cross-examine Spears and Johnson.  (Id.)

Plaintiffs' arguments are not persuasive.  Defendants filed their Motion for Partial Summary Judgment believing discovery was complete.  In their response to the Motion, Plaintiffs use Spears' examination as evidence, knowing the examination was conducted after discovery had ended.  Plaintiffs told Defendants of the Spears examination after the fact.  Reopening discovery to allow the parties to depose Spears and Johnson would be costly, time-consuming, unfair, and unproductive.  See FedEx Corp., 2011 WL 2023297  at, *3 (denying motion to reopen discovery because unfair to nonmoving party).  Defendants would be prejudiced by reopening discovery.

All five factors counsel against reopening discovery. Plaintiffs have not satisfied their burden.  The Motion to Reopen Discovery is DENIED.

**B.    The Motion to Disallow Usage of Examination of James Spears**

The Sixth Circuit considers five factors to determine whether failure to comply with Rule 26 was substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Howe v. City of Akron, 801 F.3d 718, 748 (6th Cir. 2015).

The Howe factors support Defendants' Motion. A party is surprised when an opposing party fails to make a disclosure by the required deadline. See Abrams v. Nucor Steel Marion, Inc., 694 F. App'x 974, 982 (6th Cir. 2017); Gregory v. Raven, 2020 WL 4194524, at *3 (W.D. Tenn. July 21, 2020). Plaintiffs did not list Spears in their Rule 26(a) disclosures by the required deadline. (D.E. 80) Defendants cannot cure the surprise because discovery is complete. See Gregory, 2020 WL 4194524, at *3 (finding party could not cure surprise after time to depose witness had passed). Considering Spears' examination would disrupt the case. Doing so would require, inter alia, that the Court postpone its partial summary judgment order to allow Defendants to cross-examine a witness 1000 miles away. Spears'

14

examination is irrelevant to the Williams' case and is not important.  Plaintiffs give no reason for omitting Spears in their Rule 26 disclosures.  Plaintiffs examined Spears knowing discovery had ended and included his examination in their response.  All five factors weigh in favor of excluding Spears' examination.  The Court will not consider it in deciding Defendants' Motion for Partial Summary Judgment.  Defendants' Motion is GRANTED.

### C.   Plaintiffs' Demand for Sanctions

Plaintiffs allege that Defendants violated Rules 26(a) and (e) and seek sanctions under Rule 37.  (D.E. 82-1)  Plaintiffs contend that Defendants violated Rule 26(e) by failing to identify Spears or his complaint.  (D.E. 82-1)   Rule 26(e) requires a party who makes a disclosure under Rule 26(a), or who has responded to an interrogatory, request for production, or request for admission to correct any disclosure in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect. Fed. R. Civ. P. 26(e).

Defendants had no reason to believe their disclosures were incomplete or incorrect.  Defendants were not obligated to disclose the identity of Spears under Rule 26(a) because Defendants had no intention of using Spears to support their defense.  See Fed. R. Civ. P. Rule 26 Committee Notes on Rules—

15

2000 Amendment ("A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use.").

Defendants were not required to supplement their discovery responses to include Spears' complaint.  In their discovery requests, Plaintiffs sought all documents relating to every consumer complaint Defendants had received since January 1, 2018. (D.E. 82)  Defendants objected to disclosure, questioning the relevancy of the information. (D.E. 88)  Plaintiffs never filed a motion to compel.  Defendants did not violate Rule 26. Plaintiffs' demand for sanctions is DENIED.

**D.  The Motion for Partial Summary Judgment**

In their Motion, Defendants seek Summary Judgment on Plaintiffs' claims of unjust enrichment, negligence, gross negligence, fraud, and punitive damages, and seek to limit actual and compensatory damages to damages recoverable under Tennessee law.  For the following reasons, Defendants' Motion is GRANTED.

**1.  Unjust Enrichment**

"[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."  Brown v. VHS of Mich., Inc., 545 F. App'x 368,372 (6th Cir. 2013).  Plaintiffs assert a claim for unjust enrichment. (D.E. 1-1)  Defendants moved for Partial Summary Judgment on that claim. (D.E. 64)  Plaintiffs did not address

16

the claim in their response. (D.E. 75)   Therefore, Plaintiffs have abandoned their unjust enrichment claim.   Defendants' Motion on the unjust enrichment claim is GRANTED.

### 2.   Negligence

To establish a prima facie claim of negligence, a plaintiff must establish the following essential elements: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact;  and (5) proximate, or legal, cause. Giggers v. Memphis Hous. Auth., 277 S.W.3d 359, 364 (Tenn. 2009).  At issue here is what, if any, duty Defendants owed Plaintiffs.  In their complaint, Plaintiffs allege that Defendants owed a duty of workmanlike conduct. (D.E. 1-1)  ("Defendants had a duty to Plaintiffs to properly replace the security system in Plaintiffs' home in a workmanlike manner.")   When a contract exists and "is silent regarding the standard of conduct that applies to the contract's performance, the courts will imply a standard of workmanlike conduct."   Northwest Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co., 410 S.W.3d 810, 817 (Tenn. Ct. App. 2011). Defendants argue that no contract exists between Plaintiffs and Defendants, and thus that Defendants owed no workmanlike duty to Plaintiffs.  (D.E. 64-1)  Defendants argue that, even if a contract exists, the Court should grant summary judgment on

17

Plaintiffs' negligence claim because contract, not tort, law would govern. (Id.) Plaintiffs assert that, even if no contract exists, Defendants owed Plaintiffs a duty of reasonable care. (D.E. 75)

### a.   Whether a Contract Exists

"In order for an enforceable contract to exist, there must be a 'meeting of the minds between the parties with respect to the essential terms of the agreement.'" Conner v. Hardee's Food Sys., Inc., 65 F. App'x 19, 22 (6th Cir. 2003) (quoting Simonton v. Huff, 60 S.W.3d 820, 826 (Tenn. Ct. App. 2000)).

In their complaint, Plaintiffs allege that Jacqueline Williams insisted on paying only $27.99 per month. (D.E. 1-1) They further allege that, once Jacqueline Williams had discovered the adjusted rate, she refused to sign the contract, and that Stout forged her signature. (Id.) In their response to summary judgment, Plaintiffs claim Stout "fraudulently induced Ms. Williams to sign the contract by tricking her into tapping the tablet." (D.E. 75-1) Both parties agree that Jacqueline Williams made clear that she would only purchase the ADT system at a rate of $27.99, that she did not know the system Stout installed would cost $52.99, and that, after realizing the price increase, she refused to pay. These undisputed facts demonstrate that there was no meeting of the minds between the Williams and Defendants. In fact, Plaintiffs' unjust enrichment claim argues as much.

18

(D.E. 1-1) ("[T]here is not now, nor has there ever been any signed contract or meeting of the minds between Plaintiffs and Defendants.") No contract between Plaintiffs and Defendants exists. Defendants did not owe a duty of workmanlike conduct to Plaintiffs.

### b.  A Duty of Reasonable Care

In their response to Defendants' Motion for Partial Summary Judgment, Plaintiffs allege for the first time that Defendants owed a duty of reasonable care independent of any contract that might have existed. (D.E. 75) Plaintiffs may not expand claims or assert new theories in response to summary judgment. See, e.g., Desparois v. Perrysburg Exempted Village Sch. Dist., 455 F. App'x 659, 666 (6th Cir. 2012); Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007); Tucker v. Union Needletrades, Indus. & Textile Emp., 407 F.3d 784, 788 (6th Cir. 2005). The duty of reasonable care theory of negligence differs from the workmanlike standard Plaintiffs allege in their complaint. (D.E. 75) Because it is a new theory, Plaintiffs may not raise the duty of reasonable care standard in response to Defendants' Motion for Partial Summary Judgment.

Defendants' Motion on the negligence claim is GRANTED.

### 3.  Gross Negligence

To prevail on a claim of gross negligence in Tennessee, a plaintiff must first demonstrate ordinary negligence. Thrasher

19

v. Riverbend Stables, 2008 WL 2165194, at *5 (Tenn. Ct. App. May 21, 2008).  Then, the plaintiff must prove that the act was "done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." Ruff v. Memphis Light, Gas & Water Div., 619 S.W.2d 526, 528 (Tenn. Ct. App. 1981) (quoting Odum v. Haynes, 494 S.W.2d 795, 807 (Tenn. Ct. App. 1972)). As described above, Plaintiffs fail to state a claim for negligence.  Therefore, Plaintiffs' gross negligence claim must be dismissed.  See Menuskin v. Williams, 145 F.3d 755, 767 (6th Cir. 1998) (dismissing gross negligence claim because plaintiff could not prove negligence).

Defendants' Motion on the gross negligence claim is GRANTED.

### 4. Fraud

Plaintiffs allege fraudulent misrepresentation against Defendants. (D.E. 1-1) "To prove fraudulent misrepresentation, a plaintiff must show that there was an intentional misrepresentation of a material fact made with knowledge of its falsity or reckless disregard for its truth." Allied Sound, Inc. v. Neely, 58 S.W.3d 119, 122 (Tenn. Ct. App. 2001). Plaintiffs must also prove that they reasonably relied on the misrepresentation to their detriment.  Id.

Plaintiffs argue that Defendants did not disclose material pricing information that would have influenced the Williams'

decision.  (D.E. 75) Plaintiffs chose Defendants' security system after seeing their advertisement.  (D.E. 1)  The flier advertised a $27.99 monthly rate.  (Id.)  Plaintiffs did not realize that the price was subject to a home assessment that could affect the price.

Defenders' employee Stout assessed Plaintiffs' home.  After his assessment, Stout made recommendations to Jacqueline Williams.  Stout installed a system that used a cell phone instead of a landline.  The recommendations and the cell phone increased the monthly rate to $52.99.  Stout did not tell Jacqueline Williams about the price increase.  She did not realize the new price until later that night.  Plaintiffs admit that Stout's failure to tell Williams about the price was a mistake, not an intentional act.  (See D.E. 75) ("[Stout] even admitted repeatedly that not disclosing the price term in question was . . . mere oversight on his part.")  There is no evidence that Defendants intentionally misrepresented the price to Plaintiffs.  Defendants' Motion on the fraud claim is GRANTED.

### 5.   Punitive Damages

Punitive damages are appropriate if a defendant acts intentionally, fraudulently, maliciously, or recklessly.  Hodges v. S.C. Toof & Co., 883 S.W.2d 896, 901 (Tenn. 1992).  "Punitive damages are reserved for only the most 'egregious of wrongs' . . . for conduct that was so reprehensible that it must be both

21

punished and deterred." <u>Duran v. Hyundai Motor Am., Inc.</u>, 271 S.W.3d 178, 206-07 (Tenn. Ct. App. 2008).

Plaintiffs argue for punitive damages because Defendants "engaged in negligent behavior of a reckless sort." (D.E. 75) Punitive damages are not appropriate for negligence claims. <u>See</u> <u>Hodges</u>, 883 S.W.2d at 901. Defendants did not act recklessly. "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." <u>Whalen v. Bourgeois</u>, 2014 WL 2949500, at *15 (Tenn. Ct. App. July 27, 2014). Plaintiffs argue that Stout "committed to installing a system he had no experience with, failed to follow basic steps set out by company policy, spent hours troubleshooting avoidable problems" and, as a result, "Plaintiffs were left with a barely functional alarm system under no active monitoring". (D.E. 75) Plaintiffs offer no evidence that Defendants or Stout consciously disregarded a substantial and unjustifiable risk. Defendants did not act recklessly. Punitive damages are not appropriate. Defendants' Motion on the punitive damages claim is GRANTED.

### 6.  Actual Damages and Compensatory Damages

Plaintiffs claim $1,450 in actual damages, but seek more than $280,000 in compensatory damages. (D.E. 81-1) Plaintiffs

claim $100,000 in compensatory damages for fraud, $100,000 in compensatory damages for negligence, and $80,000 in compensatory damages for violations of the TCPA. (Id.)  In their Motion for Partial Summary Judgment, Defendants seek to limit Plaintiffs' damages to actual damages recoverable under Tennessee law. (D.E. 64)  The Court has dismissed Plaintiffs' negligence and fraud claims.  The Court also dismisses Plaintiffs' claim for compensatory damages for TCPA violations.

As noted above, a plaintiff abandons its claim when it fails to address it in response to summary judgment. Brown, 545 F. App'x, at 372.  In their Motion for Partial Summary Judgment, Defendants argue that Plaintiffs could recover a maximum of $1,290 in damages for TCPA violations. (D.E. 64-1)  Defendants contend that Plaintiffs have shown no basis for compensatory damages. (Id.)  In response, Plaintiffs spend four pages arguing the merits of their TCPA claims. (D.E. 75)  Plaintiffs do not address compensatory damages or explain why they are appropriate. By failing to address compensatory damages, Plaintiffs have abandoned their claim.  Summary Judgment is GRANTED on compensatory damages related to the alleged TCPA violations.

## V.  Conclusion

Plaintiffs' Motion to Reopen Discovery is **DENIED.** Defendants' Motion to Disallow Usage of Examination Under Oath

of James Spears is **GRANTED.** Defendants' Motion for Partial

Summary Judgment is **GRANTED.**


So ordered this 20th day of October, 2021.


/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE